In the Matter of CORBETTA CONSTRUCTION Co. et al., Petitioners, against GEORGE M. BRAGALINI et al., Constituting the Tax Commission of the State of New York, Respondents.

Third Department, November 20, 1957.

George W. Scapolito for petitioners.

Louis J. Lefkowitz, Attorney-General (Robert W. Bush and John R. Davison of counsel), for respondents.

FOSTER, P. J. This is a proceeding under article 78 of the Civil Practice Act, and section 510 of the Tax Law, to review a final determination of the State Tax Commission which sustained an additional assessment for truck mileage taxes imposed under article 21 of the Tax Law.

Petitioners were engaged in the construction of a portion of the New York State Thruway in the city of Yonkers under an improvement contract with the State of New York. The site of the work was approximately three miles long with a maximum width of about 300 yards. Within this site all existing streets and highways were ultimately to be obliterated by the Thruway. During the course of construction Central Park Avenue, which ran lengthwise through the project site, was required to be kept open by petitioners so that traffic could be maintained while the sections of the Thruway on either side were being built, and petitioners were also required to divert traffic to alternate roadways while the sections lying on what had been Central Park Avenue were being built.

During the progress of the work petitioners used certain Euclid equipment known as Model FD-15 Ton Rear Dump. These vehicles were in excess of eight feet in width and had a carrying capacity of 15 tons. They unloaded like dump trucks, and petitioners concede that in appearance they looked like large dump trucks. Their use ordinarily was confined to carrying heavy loads in heavy construction work, such as mining and rock moving, and there was testimony which remained undisputed that they were not adaptable for other uses. This testimony would seem supported as a matter of common sense by the fact that such vehicles, although self-propelled, could not be used legally on ordinary public highways without a special permit (Vehicle and Traffic Law, § 14, subd. 19). For the use of these vehicles within the construction area an assessment of a truck mileage tax has been made.

It is not disputed that these vehicles were used solely within the construction area for the purpose of moving rock from one point to another. On occasion they were driven over Central Park Avenue in moving from one point to another within the area. How often does not appear, and the assessment was based on an inventory record which showed the amount of diesel fuel used by each vehicle while on the site as a whole.

A road building machine is not a motor vehicle, even though it may be self-propelled, within the meaning of section 501 of the Tax Law, which, in subdivision 2 states: "'Motor vehicle' shall not include however, * * * road building machines". The Truck Mileage Tax Regulations also exclude road building machines (reg. 21, pt. 1, art. 11; N. Y. Off. Comp. of Codes, Rules & Regulations [9th Supp.], p. 609), and under examples (2) this rather significant language is used: "(2) A road building machine is used for road building operations and is also used to transport materials to customers. It is excluded from the definition of motor vehicle only when used for road building operations. When it is used for any other purpose it is a motor vehicle. Therefore, a permit and plate should be obtained for such motor vehicle. The mileage of the vehicle when it is used as a road building machine is not subject to tax but its mileage when being used for any other purpose is taxable."

It seems to me that it strains credulity to classify the vehicles in question as motor vehicles and not road building machines. That they could be used for any purpose except road building, or in a restricted area of heavy construction, seems a decidedly remote possibility. There is no testimony that they are ever used except for such purposes, and the very fact a special permit is required on account of their width for any journey upon a public highway, specifying the route to be followed (Vehicle and Traffic Law, § 14, subd. 19), would seem as a matter of common sense to render unpracticable their use as ordinary heavy trucks upon the public highways of the State.

The foregoing is sufficient to require an annulment of the determination in our opinion, but we may add that at least a question exists as to whether under the circumstance the imposition of a highway use tax is not repugnant to the spirit and intent of the statute (Tax Law, art. 21; L. 1951, ch. 74). So far as any damage occasioned to Central Park Avenue is concerned that was only of detriment to petitioners themselves since they were required to maintain the roadbed for temporary traffic and until such a time as the Thruway over it was being

laid. However, it is unnecessary for the purpose of this decision to express any opinion as to the merits of this issue. The determination should .be annulled.

BERGAN, COON, HALPERN and GIBSON, JJ., concur.

Determination annulled, with $50 costs in favor of petitioners and against the State Tax Commission.